IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY M. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10–cv–0135–SCW |
| ) | |
| SUZANN BAILEY, S.A. GODINEZ, & ) | |
| RICK HARRINGTON, ) | |
| ) | |
| Defendants. ) | |

# FINDINGS OF FACT & CONCLUSIONS OF LAW

**WILLIAMS, Magistrate Judge:**

A jury returned a verdict for Suzann Bailey (the Dietary Director for the Illinois Department of Corrections (IDOC)) and against inmate Larry Johnson in a trial for money damages on Johnson's claims that Bailey was deliberately indifferent to a serious risk of harm. Johnson's case stemmed from allegations that Bailey was deliberately indifferent to Johnson's health by providing him with a diet heavy in soy-based "textured vegetable protein."

After the jury trial, bench trial was held on Johnson's claims for injunctive relief against Bailey (and Rick Harrington and S.A. Godinez, the IDOC officials who would be responsible for executing any potential injunctive relief). Once the jury found against Johnson on his damages claims, the following claims remained for the bench trial:

1. Under the Eighth Amendment, whether Johnson is entitled to injunctive relief against Godinez, Bailey, Harrington, and Lloyd Hanna (Menard's food supervisor) because Bailey acted with deliberate indifference to the objectively serious risk posed by either the nutritional deficiencies or the excessive amounts of TVP present in his diet.

2. Under the First Amendment, whether Johnson is entitled to injunctive and declaratory relief against Harrington because, as a practicing Buddhist, the short time Johnson gets to eat creates an unjustified and substantial burden on his free exercise of religion.

1

3. Under RLUIPA, whether Johnson is entitled to injunctive and declaratory relief because his diet substantially burdened his religious exercise with no compelling governmental interest to justify that burden.

The Court heard all the testimony during the jury trial, as well as additional witnesses who only testified during the proceedings regarding potential injunctive relief. Witnesses included seven non-party inmates from Menard Correctional Center, official-capacity Defendant Richard Harrington (the current Menard warden), Lloyd Hanna (Menard's food supervisor), Defendant Bailey, and the Plaintiff. Before reviewing its findings of fact, the Court will articulate the relevant standards that will guide its conclusions of law.

## LEGAL STANDARDS

### I. Standard for Permanent Injunction

For a permanent injunction to issue, the plaintiff must show: (1) success, as opposed to a likelihood of success, on the merits; (2) irreparable harm; (3) that the benefits of granting the injunction outweigh the injury to the defendant; and (4) that the public interest will not be harmed by the relief requested. **ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist., 672 F.3d 492, 498 (7th Cir. 2012).**

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). **Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012).** Under the PLRA, prospective injunctive relief "shall extend no further than necessary to correct the violation," and courts may not grant injunctive relief unless "it finds such relief is narrowly drawn, extends no further than necessary to correct the violation," and is "the least intrusive means to do so." **18 U.S.C. § 3626(a)(1).**

## II. Sources for Injunctive Relief — *Ex Parte Young* and RLUIPA

Injunctive relief is available to plaintiffs in § 1983 cases under the *Ex parte Young* exception to the Eleventh Amendment's prohibition of lawsuits against states in federal court. Under *Ex parte Young*, a citizen may sue a state official for injunctive relief when that official's action violates federal law. **Ex parte Young, 209 U.S. 123, 159–60 (1908).** The *Young* exception, however, only permits relief against state officials when there is an ongoing or threatened violation of federal law. **Vickery v. Jones, 100 F.3d 1334, 1346 (7th Cir. 1996).** RLUIPA is one such federal law: it affords injunctive relief to prisoners whose religious exercise has been substantially burdened, unless that burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. **42 U.S.C. § 2000cc-1(a)**.

Absent such a continuing violation of federal law, injunctive relief is improper. **Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)).** The proper defendant in a claim for injunctive relief is the government official responsible for ensuring that any injunctive relief would be carried out. **Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011) (citing Feit v. Ward, 886 F.2d 848, 858 (7th Cir. 1989)).** An inmate seeking an injunction on the ground that there is a continuing violation must come forward with evidence to show that an official was at the time suit was filed, and is currently, violating his constitutional rights. **Farmer, 511 U.S. at 845–46.**

## III. Eighth Amendment Deliberate Indifference

Though the Constitution does not mandate comfortable prisons, it forbids inhumane ones. **Farmer v. Brennan, 511 U.S. 825, 832 (1994).** The conditions of a prisoner's confinement are subject to the Eighth Amendment's prohibition of "cruel and unusual punishments." **Id.; U.S.**

**CONST. amend. VIII.**[1] Inmates must be confined under conditions that provide for their basic human needs. ***Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).** The Eighth Amendment does not require the most intelligent, progressive, humane or efficacious prison administration. ***Oliver v. Deen*, 77 F.3d 156, 161 (7th Cir. 1996)**. Nor must prisons provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans. ***Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001).** But prison officials have a duty to provide inmates adequate clothing, shelter, medical care, and food. ***Farmer*, 511 U.S. at 832.** Under the Eighth Amendment, a prisoner's diet must provide adequate nutrition. ***Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009). *Accord Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996)**.

Prison officials cannot be held liable unless a prisoner shows both an objectively serious risk of harm and that officials knew about it and could have prevented it but did not. ***Mays*, 575 F.3d at 648.** The objective analysis focuses on whether the plaintiff was forced to endure conditions that exceeded contemporary bounds of decency of a mature, civilized society. ***Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994).** Withholding food is not a *per se* objective violation of the Constitution: courts must assess the amount and duration of the deprivation. ***Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999).** For example, "depriving a person of food for four days would impose a constitutionally significant hardship." ***Atkins v. City of Chicago*, 631 F.3d 823, 830 (7th Cir. 2011) (citing *Reed*, 178 F.3d at 853–54).** But a prisoner who gets three square meals a day has no constitutional recourse just because the food is poorly-prepared. ***Lunsford*, 17 F.3d at 1580.** A diet of "grue" (a baked mash of potatoes, oleo, syrup, vegetables and eggs) might be tolerable for a few days and intolerably cruel for weeks or month. ***Hutto v. Finney*, 437 U.S. 678, 683, 686–87 (1979).** Serving tainted or sickening food with the effect of causing substantial weight loss would

---

[1] The Eighth Amendment's ban on inflicting cruel and unusual punishments is made applicable to the States by the Fourteenth Amendment. ***Hutto v. Finney*, 437 U.S. 678, 685 (1979).**

violate the Eighth Amendment. *Prude v. Clarke*, 675 F.3d 732, 734 (7th Cir. 2012). The inquiry is necessarily difficult, imprecise, and contextual. *Lunsford*, 17 F.3d at 1579.

The subjective prong requires a showing that defendants actually received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference and still disregarded the risk. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008).

### IV. First Amendment Religious Exercise

While prisoners retain the right to exercise their religious beliefs, that right is not unfettered. *Ortiz v. Downey*, 561 F.3d 665, 669 (7th Cir. 2009). A regulation or policy that infringes on an inmate's exercise of religion must be reasonably related to a legitimate penological interest. *Maddox v. Love*, 655 F.3d 709, 719 (7th Cir. 2011). Prison officials must accommodate an inmate's religious preferences if the accommodations are consistent with legitimate penological objectives. *See Grayson v. Schuler*, 666 F.3d 450, 452–52 (7th Cir. 2012).

### V. RLUIPA

RLUIPA protects prisoners' right to free exercise of religion at a heightened level: it affords injunctive relief to prisoners whose religious exercise has been substantially burdened, unless that burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a); *Sossamon v. Texas*, 131 S. Ct. 1651, 1655–56 (2011).

### FINDINGS OF FACT

Considering all the evidence presented, including the testimony of the witnesses and the documentary evidence in the case, the undersigned finds as follows.

Regarding the LVO diet served to Plaintiff:

- Larry Johnson is a Buddhist whose sincerely held beliefs require that he not eat meat.

5

- Johnson began eating from the Lacto-Ovo Vegetarian (LVO) diet in 2004.

- The LVO diet consists in part of soy based crumbles which are intended to replace the protein inmates would otherwise receive if they were on the standard diet and eating meat.

- The soy-based crumbles constitute a significant portion of the diet. However, there are other sources of protein in the diet, as well as fruits, grains, milk and juice.

- The soy crumbles are made from textured vegetable protein, produced in the past by ADM under the trademark "TVP."

- The IDOC has also, in the past, served soy crumbles made from a similar product produced by DuPont called Solae. (It appeared the witness, Bailey, was referring to a textured vegetable protein made by Solae LLC – formerly Dupont Protein Technologies, **see http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=5545648** )

- It is unclear whether Defendant Bailey's admissions referred only to the trademarked TVP produced by ADM or to "TVP" as a general term referring to all textured vegetable protein. But based on Witness Bailey's interchangeable use of this term during the first day of her testimony, the court concludes that the term TVP, for purposes of this case, is a generic term referring to soy protein, served by IDOC in the form of soy crumbles, whether produced by ADM or Solae.

- The LVO diet as contained in the IDOC menus currently supplies about 2400 calories/day.

- At Menard, there are times when TVP is used as a substitute for other proteins – such as peanut butter, beans, or eggs – when the facility is short on the other proteins. This sometimes happens when the facility is waiting on a delivery.

- After Mr. Johnson started consuming the LVO diet in 2004 he began experiencing chronic constipation, fatigue and a constant feeling of cold. After Mr. Johnson stopped eating the soy-based crumbles contained in the LVO diet in 2009 these symptoms greatly improved or disappeared.

- As to Defendants Hanna and Bailey, the Plaintiff has conclusively established (through procedural admissions, *see* Doc. 154, 6–7) that large amounts of TVP have harmful health effects. However, it is unclear on the evidence before the Court what constitutes a large amount. It is therefore unclear whether the quantities of TVP (or its equivalent soy based product from DuPont) that are provided to inmates on the lact-ovo vegetarian diet at Menard (or any other IDOC facility) are in fact harmful to inmates who consume the diet.

- While Mr. Johnson exhibited symptoms while consuming soy crumbles, it is not clear to the Court whether this was a result of anything inherently harmful about the crumbles contained in the diet or due to some particular sensitivity exhibited by Mr. Johnson.

- Mr. Johnson did discuss his symptoms of constipation with medical professionals at Menard, but was advised at the time to eat more fruits and vegetables

- Inmates at Menard, as well as other IDOC facilities, can request—and be put on—a no-soy therapeutic diet.

- Mr. Johnson has never requested to be put on a "no-soy" therapeutic diet that would also comport with his religious requirements of not consuming meat. Eating a no-soy diet would be a practicable way to exercise his religious beliefs about dietary requirements.

- The Court finds that, based on this record, none of the defendants are currently exhibiting indifference to any health risk on Mr. Johnson's part.

- The Court further finds that, based on this record, none of the defendants is in any way burdening Mr. Johnson's practice of his religion.

- The Court finds no evidence that the TVP being served is generally harmful to anyone or presents a serious risk of harm to Mr. Johnson.

- The Court finds no evidence that the LVO diet provides insufficient calories.

- And although Mr. Johnson has exhibited symptoms in the past that may suggest that TVP is particularly harmful to Mr. Johnson, the IDOC has mechanisms in place to deal with that situation—namely, Mr. Johnson may consult with the medical staff for the express purpose of being put on a no-soy diet, if it is indeed soy that is causing him harm.

Regarding Menard's policy of having inmates on the LVO diet wait at the end of the line to eat:

- As a result of his religious LVO diet, Mr. Johnson, and every other inmate eating in the chow hall, must wait at the end of the line.

- The reason special diets are placed at the end of the line is for security reasons in that each inmate on the diet has to sign for their meal. If they were at the front, or in the middle of, the line then there would be an increased risk to the correctional officers in the chow hall because the inmates waiting in line are standing next to the wall as opposed to sitting at a dining table.

- The process of signing the special diets takes time and diverts the correctional officers attention, so it is more safely accomplished when the other inmates are sitting down

- All inmates at Menard eat breakfast in their cells, every day.

- From 2004, when Mr. Johnson began consuming the LVO diet, until February 2011, Mr. Johnson was living in the South Cell house and ate his meals – other than breakfast, which is eaten in the cells - with those inmates.

- During that time period there were also occasions when, due to Mr. Johnson's job in the law library, his lunches were delivered to him at the law library rather than Mr. Johnson going to the chow hall.

- During this time period, when Mr. Johnson did eat in the chow hall, for some lunches and all dinners, he was rushed when eating his meals in that he only received between 2 -5 minutes to eat. This was due to the fact that Mr. Johnson was always one of the last inmates to start eating.

- Mr. Johnson is, at the time of trial, in segregation, and therefore eating all of his meals in his cell.

- In **February 2011**, the inmate workers at Menard were moved to the North Cell house. He continued living in the North Cell house up until two weeks before trial when he was put in segregation.

- After Johnson was moved to the North Cell House, he was given sufficient time to eat when dining in the chow hall.

- Additionally, Mr. Johnson had, up until the two weeks before trial, been working in healthcare where his lunches were delivered to him. He was only eating his dinner in the chow hall.

- It is unclear whether Mr. Johnson will return to his job and the North Cell House when released from segregation.

- Warden Harrington has only been Warden since February of 2013.

- Harrington's policy at Menard is that the correctional officers in charge of the chow line wait until the last inmate served is done eating before everyone is ordered to get up. Observance of this policy should ensure that each inmate receives enough time to eat their meal

- At this time, there is no issue with the amount of time that Mr. Johnson has to eat his meals. Mr. Johnson has had adequate time to eat for the last two years.

- It would be speculative to conclude that—in other words, it is totally unclear whether—Mr. Johnson will ever be sent back to the South Cell House, much less ever again experience issues relating to the amount of time he has to eat.

- Even if he is sent back to South Cell House, the new Warden, Harrington, is likely to adequately enforce his policy that should ensure everyone has sufficient time to eat.

- The policy of making inmates on special diets eat last is grounded in legitimate security concerns.

- At this time, Mr. Johnson has more than adequate time to eat. Any *potential* problem would only arise if COs fail to follow the warden's policy by failing to give inmates enough time to eat.

- If Mr. Johnson were, in fact, continuing to only receive 2 – 5 minutes to eat each meal, the court would, on this record, find that to be a substantial burden to his religious practice

- However, that is not the current situation. In any event, if the court were to speculate that Mr. Johnson might someday find himself in a situation where Warden Harrington's policy was not being enforced, the Court would not have a sufficient basis on this record, to conclude that utilization of the IDOC grievance process would be insufficient to rectify that situation.

## CONCLUSIONS OF LAW

Based on the testimony and documentary evidence in this case, the Court concludes there are no continuing violations of either the Constitution or of RLUIPA to enjoin. Plaintiff has not succeeded on the merits, and has not shown any irreparable harm. Therefore, no injunction shall issue: Plaintiff has lost his case for injunctive relief.

**1. Eighth Amendment Claims**

Whether based on inadequate caloric intake (either as part of the menu or because of rushed eating) or the dangers of TVP, Plaintiff has not shown any continuing Eighth Amendment violations. Prison officials have a duty to provide inmates adequate clothing, shelter, medical care, and food. **Farmer, 511 U.S. 825, 832 (1994).** Showing they have violated the Eighth Amendment requires Plaintiff to show that officials know that he is facing a substantial risk of serious harm and are disregarding that risk. **Townsend, 522 F.3d at 768.**

**a. No Continuing Serious Risk**

As it pertains to Plaintiff's caloric intake, the LVO diet as contained in the IDOC menus—the diet he is currently on—contains about 2400 calories per day, sufficient for a moderately active male age 31-50, or an active male over 50. And while it is clear that "large amounts" of TVP have

9

harmful health effects, it is unclear what constitutes a large amount, and therefore unclear whether the quantities of TVP provided to inmates on the LVO are harmful or not. Even if Plaintiff is particularly sensitive to TVP, If Plaintiff is able to eat TVP, then he gets enough calories. If Plaintiff is unable to eat TVP, a no-soy option is available to him, and sufficient calories are therefore available.

As it pertains to the chow line rule, since 2011, when he moved to the North Cell house, Plaintiff has been eating many meals in his cell or at his work station—he has had sufficient time to eat. And now, under Warden Harrington, even though Plaintiff may have to wait longer for his meal than other inmates, the meal does not end until the last inmate finishes eating.

In short, none of the evidence in the case established an objectively serious risk of harm to Plaintiff.

### b. No Subjective Deliberate Indifference

The Court finds, based on the record before it, that none of the defendants (and no current IDOC official) are acting with deliberate indifference to Plaintiff. Subjective deliberate indifference requires that an official actually receives information so he or she may draw an inference that a substantial risk to an inmate exists. It is also worth noting that, even if Plaintiff is particularly susceptible to soy, he is the best position to give information about that risk to officials, and he has not done so.

### c. Reasonable Measures to Guarantee Safety

Further, the procedures that now surround Plaintiff's prison dietary experience are reasonable measures to abate even any speculative risk to Plaintiff's health and safety. **See Bagola v. Kindt, 131 F.3d 632, 646 (7th Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)) (prison officials must "take reasonable measures to guarantee the safety of the inmates.").** The new warden's policies guarantee inmates (including Plaintiff) have time to eat, and

10

Plaintiff may consult with medical staff for the express purpose of being put on a no-soy diet, if it is indeed soy that is causing him harm.

### 2. First Amendment Claims

A regulation or policy that infringes on an inmate's exercise of religion must be reasonably related to a legitimate penological objective. **Maddox, 655 F.3d at 719.** Unless prison officials accommodate an inmate's religious preferences in a manner consistent with those objectives, the First Amendment has been violated.

#### a. No Burden

The Court finds there is no burden on Plaintiff's religious exercise. Since February 2011, he has been receiving adequate calories, adequate time to eat, and he has always had the option of requesting a therapeutic soy-free diet—an option he has chosen not to take. None of the policies currently in place put pressure on Plaintiff to change his behavior such that he must choose between his beliefs and his safety. **See Hunafa v. Murphy, 907 F.2d 46, 47 (7th Cir. 1990).** The Defendants should note: *if* it were the case that Plaintiff was getting a mere two to five minutes for every meal, the Court would find a burden. But that has not happened to plaintiff since February 2011.

#### b. Legitimate Penological Objective

Further, Defendants showed a legitimate, neutral penological objective to justify the established system of having inmates on special diets (including Plaintiff) eat last. **See Kaufman v. McCaughtry, 419 F.3d 678, 683 (7th Cir. 2005) ("Prison officials unquestionably have a legitimate interest in maintaining institutional security.").** And even then, Harrington's policy that a meal is over when the last inmate served is finished eating means that no inmates, including Johnson, get an inadequate amount of time to eat. Finally, it is clear Johnson has two available

accommodations—a soy-free diet or the LVO diet—for his dietary beliefs. That he has chosen one over the other does not mean the Constitution has been violated.

Any free exercise violations stopped in February 2011, when Plaintiff moved to North Cell House. There is no continuing First Amendment violation, so no injunction can issue on that ground.

### 3. RLUIPA Claims

A RLUIPA claim requires the plaintiff to establish a substantial burden to his religious exercise—one that is not counterbalanced by the government's showing of a compelling governmental interest. **Sossamon v. Texas, 131 S.Ct. 1651, 1655–56 (2011).**

As found above, there is no ongoing burden to Johnson's religious exercise. He is getting ample time to eat his religious diet, he gets adequate calories from it, and there is a no-soy therapeutic diet easily available to him in case he cannot stomach the LVO diet containing TVP. No aspect of the IDOC's LVO diet, nor any part of the current food line policy, renders Plaintiff's religious exercise "effectively impracticable," as is required to show a substantial burden. **Koger v. Bryan, 523 F.3d 789, 799 (7th Cir. 2008).** The no-soy diet, of which Johnson has not tried to avail himself, is a practicable way to get adequate nutrition while maintaining his Buddhist beliefs. No continuing RLUIPA violation means no injunction will issue here.

### DISPOSITION

In short, there are no ongoing constitutional or federal violations for the Court to enjoin. Further, no conceivable injunction could possibly be more narrowly drawn than Warden Harrington's current procedures, which take into account prisoner and inmate security, and accommodate the religious and health needs of Johnson by offering meatless, no-soy diets with ample nutrition. **See 18 U.S.C. § 3626(a)(1).**

For the foregoing reasons, the Court finds for Defendants and against Plaintiff Johnson on all claims for injunctive and declaratory relief. No injunction shall issue. The Clerk is **DIRECTED** to enter final judgment for all Defendants and against Plaintiff Johnson on all claims. This case is closed.

**IT IS SO ORDERED.**

**DATE: March 30, 2013**                                         /s/ *Stephen C. Williams*
                                                                 **STEPHEN C. WILLIAMS**
                                                                 United States Magistrate Judge